U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed November 23, 2010**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BRIGGS-COCKERHAM, L.L.C., | § | CASE NO. 10-34222-BJH-11 |
| | § | |
| Debtor. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion by Harvey L. Morton, as chapter 11 Trustee of Vallecito Gas, LLC (the "Trustee") seeking to dismiss this chapter 11 case or, in the alternative, to appoint a chapter 11 Trustee (the "Motion to Dismiss"). The Motion to Dismiss is opposed not by the debtor, Briggs-Cockerham, L.L.C. ("B-C"), but by several defendants (the "Kievit Defendants")[1] in an adversary

---

[1] The Kievit Defendants are Tom D. Kievit, Kyle A. Kievit, J.L. Bradshaw Trust, Robert E.and Rosalie T. Dettle, as Trustees of The Robert E. and Rosalie T. Dettle Living Trust, Graham G. Haddock, III, R.D. Adams, Connie Adams, The Dickinson Family Revocable Living Trust, Roland Murphy, Lynette J. Esch, David Anthony Esposito, Kathleen R. Esposito, Lewis Pat Lane, Lynn L. Lane, Stephen J. Murdoch,, John Yonkers, Judy Yonkers, Ray Koren, S. Frank Culberson, Judith Armogida, Kerry Burleson, and The Esch Family Trust.

**Memorandum Opinion and Order**

proceeding filed by the Trustee in the Vallecito Gas, LLC ("Vallecito) bankruptcy case (the "Vallecito Case"), and who assert contingent claims against B-C. *See* Case No. 07-35674-BJH-11; Adv. Pro. No. 10-3039-BJH.

This dispute has a complicated factual and procedural history, the details of which are set forth in (i) the Court's Memorandum Opinion and Order dated August 29, 2008 in Adversary Proceeding No. 08-3132-BJH, (ii) the court-approved disclosure statement in the Vallecito Case (Docket No. 203 in Case No. 07-35674-BJH-11), (iii) the Court's Amended Order Relating to Order to Show Cause (Docket No. 351 in Case No. 07-35674-BJH-11, and (iv) the Court's Memorandum Opinion and Order dated November 17, 2010 in Adversary Proceeding No. 10-3039-BJH-11 (the "Morton Adversary"). However, an abbreviated recitation of some of the factual and procedural background of the present dispute is necessary, to which we now turn.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Prior to its bankruptcy filing, Vallecito purchased a mineral lease, located on the land of the Navajo Nation in San Juan County, New Mexico, from Tiffany Gas Co., LLC known as the "Hogback Lease." Suffice it to say that on the date of Vallecito's bankruptcy filing, there were several competing claims to the Hogback Lease, asserted in litigation pending in other fora, and the status of Vallecito's title to the Hogback Lease was less than clear. Most importantly to the resolution of the Motion to Dismiss, after it purchased the Hogback Lease but before its bankruptcy filing, Vallecito executed an assignment of the Hogback Lease to B-C, which entity held 100% of the membership interests in Vallecito.[2] Until recently, the Trustee, the Court, and all parties-in-interest

---

[2] On the date the Vallecito Case was filed, the membership interests in B-C were held 50% by Michael Briggs ("Briggs") and 50% by John Cockerham ("Cockerham").

**Memorandum Opinion and Order**                                                                                           2

in the Vallecito Case believed that B-C, while once claiming an interest in the Hogback Lease, had disclaimed any such interest in open court during the course of a hearing in the Vallecito Case; and thus, B-C no longer asserted any interest in the Hogback Lease.

After several other obstacles to the proposal of a chapter 11 plan in the Vallecito Case were resolved, the Trustee proposed the First Amended Plan of Liquidation for the Debtor (the "Plan"). Essentially, the Plan provided that the Hogback Lease would be sold to Vision Energy, LLC ("Vision") in exchange for approximately $6.6 million in cash, subject to certain terms and conditions, with the proceeds to be distributed in accordance with the various settlements with the relevant parties, who agreed to release their alleged interests in the Hogback Lease in order to permit the sale to Vision to occur. One of the conditions to the Plan becoming effective, and the closing of the sale to Vision, was that the conveyance of the Hogback Lease would be finalized pursuant to an asset purchase agreement that would provide, among other things, for the sale of 100% of the working interest and net revenue interest in the Hogback Lease, subject only to the royalty interest of the Navajo Nation, and that except for the Navajo Nation, all other interests in the Hogback Lease, including but not limited to those of B-C, would be extinguished upon the transfer of the Hogback Lease to Vision. The Plan was confirmed by Order entered on March 17, 2009 (the "Confirmation Order"). Due to the continued pendency of other litigation that affected title to the Hogback Lease, the Plan was not consummated.

In December of 2009, another significant obstacle to consummation of the Plan and the sale of the Hogback Lease to Vision became apparent. Specifically, the Trustee filed a pleading alleging that despite the prior "disclaimer" of any interest in the Hogback Lease by Briggs, Cockerham, and B-C, and despite the existence of a temporary restraining order issued in state court restraining

Vallecito, Briggs, and their affiliates from disposing of any of their assets, Briggs, acting on behalf of B-C, had sold overriding royalty interests in the Hogback Lease (collectively the "ORRI Interests") to various third-parties, including the Kievit Defendants. *See* Trustee's Expedited Mot. For Order to Show Cause as to Why Michael Briggs, Briggs-Cockerham LLC and Joel Pugh Should Not be Held Contempt [sic] and Sanctioned (Docket No. 329 in Case No. 07-35674-BJH-11)(the "Motion for Order to Show Cause"), pp. 2-3. On March 9, 2010, the Trustee filed the Morton Adversary in the Vallecito Case against the persons to whom Briggs transferred ORRI Interests in the Hogback Lease, including the Kievit Defendants. The Trustee did not initially sue B-C in the Morton Adversary.[3]

On April 16, 2010, B-C filed its own petition for relief under chapter 11 in the United States Bankruptcy Court for the Eastern District of Texas, and the case was assigned to the Honorable Brenda Rhoades.[4] *See* Case No. 10-41219-11 (the "B-C Case"). On April 21, 2010, the Office of the United States Trustee moved to transfer venue of the B-C Case to this Court (the "Venue Transfer Motion"), which B-C opposed. While the Venue Transfer Motion was pending but before it was determined, the Trustee filed the Motion to Dismiss in Judge Rhoades's court. However, before Judge Rhoades heard the Motion to Dismiss, she granted the Venue Transfer Motion over B-C's opposition, and the B-C Case was transferred to this Court by Order entered on June 1, 2010.[5]

---

[3] The Trustee recently amended the complaint in the Morton Adversary to assert a claim against B-C.

[4] Briggs and his wife, Emma Briggs, also filed a chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Texas on April 5, 2010. *See* Case. No. 10-41046-11.

[5] The Office of the United States Trustee also moved to transfer venue of the Briggs' individual chapter 11 case to this Court, which the Briggs' opposed. That motion was also granted, and the case was transferred to this Court. *See* Case No. 10-34276-BJH-11. The period during which the Briggs' had the exclusive right to propose a chapter 11 plan expired, and the Trustee has filed a chapter 11 plan in the Briggs' individual case. A hearing on the disclosure statement is set for December 1, 2010.

The Trustee contends, and B-C does not dispute, that at the meeting held pursuant to 11 U.S.C. § 341 in the B-C Case on May 21, 2010, B-C indicated that it did not oppose the Motion to Dismiss.

On June 17, 2010, the Trustee re-filed the Motion to Dismiss, presumably because the B-C Case was now pending in this Court. As noted earlier, B-C has not filed any opposition to the Motion to Dismiss, and it is undisputed that B-C does not oppose dismissal. Rather, the Motion to Dismiss is opposed by the Kievet Defendants. The Court heard the Motion to Dismiss on August 17, 2010, but the client representative of B-C, Briggs, was not present in the courtroom. However, B-C was represented by counsel at the August 17 hearing, and reiterated that B-C is not opposed to dismissal. Both the Trustee and the Kievit Defendants offered, and the Court admitted, certain documents into evidence. The Trustee, however, asked for a continuance of the Motion to Dismiss so that he could examine Briggs, and the Court granted a one-week continuance and orally ordered Briggs to appear at the re-set hearing. The Court held the re-set hearing on the Motion to Dismiss on August 24, 2010, and heard the testimony of Briggs. Following that hearing, the Court ruled that it would not order the appointment of a chapter 11 trustee (because there is no business for a trustee to operate), but it took the portion of the Motion to Dismiss that sought dismissal of the B-C Case under advisement.

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The Court has jurisdiction over the subject matter and the parties.

II.   LEGAL ANALYSIS

Section 1112(b) of the Bankruptcy Code provides, in relevant part:

>(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
>(2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that--
>>(A) there is a reasonable likelihood that a plan will be confirmed within . . . a reasonable period of time; and
>>(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)--
>>>(i) for which there exists a reasonable justification for the act or omission; and
>>>(ii) that will be cured within a reasonable period of time fixed by the court.

Thus, the statutory framework establishes that the initial burden to establish "cause" lies with the Trustee here, and if the Trustee establishes "cause," then the burden shifts to the Kievit Defendants to establish the "unusual circumstances" exception to mandatory dismissal. *In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. Pa. 2007). The exception to mandatory dismissal set forth in § 1112(b)(2) applies if (i) a party in interest objects to the dismissal and establishes a reasonable likelihood that a plan will be confirmed within a reasonable time, (ii) the grounds supporting dismissal include an act or omission of the debtor for which there exists a reasonable justification, and (iii) such act or omission will be cured within a reasonable period of time. *Id*.

The initial inquiry, as set forth above, is whether the Trustee has established "cause" for dismissal. The Trustee argues that "cause" exists, relying primarily on two of the statutory factors – *i.e.*, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," *see* § 1112(b)(4)(A), and "gross mismanagement of the estate." *See* 11

**Memorandum Opinion and Order** 6

U.S.C. § 1112(b)(4)(B). The Trustee also relies on one other, uncodified factor – *i.e.*, that the B-C Case was filed in bad faith. It is well-established in this and other circuits that a debtor's bad faith in filing a chapter 11 petition constitutes "cause" for dismissal under § 1112. *In re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir. 1986). In support of his argument that the B-C Case was filed in bad faith, the Trustee asserts that: (i) there is no legitimate purpose for B-C's bankruptcy filing, since there is no "going concern," (ii) B-C has no operations, no cash and no bank accounts, (iii) B-C has no assets other than litigation claims against the Trustee, which the Trustee asserts are "illusory," because B-C is precluded by the Confirmation Order from asserting them, and (iv) the filing of the B-C Case is a litigation tactic, which "can only be charitably be [sic] characterized as an attempted collateral attack on the Confirmation Order." *Motion to Dismiss*, p. 13.

The Kievit Defendants' written opposition sheds little light on the nature of their objections to dismissal of the B-C Case. It simply states

> The Kievit Defendants object to the dismissal of this bankruptcy. Briggs-Cockerham, LLC claims in its schedules ownership of the New Mexico oil and gas lease known as the Hogback Lease. The Kievit Defendants each received on [sic] overriding royalty interest from Briggs-Cockerham through Michael Briggs. The Kievit Defendants request this Court set a hearing on the Motion to Dismiss .. . .

However, at the hearings on the Motion to Dismiss, the Kievit Defendants offered several arguments in opposition to dismissal of the B-C Case. First, they argued that according to the real property records of the county in which the Hogback Lease is located, B-C holds record title to the Hogback Lease. While they acknowledge that the Trustee claims that (i) B-C purported to release any interest it may have in the Hogback Lease in open court, and (ii) the Confirmation Order binds B-C to a settlement in which it released its interest in the Hogback Lease, the Kievit Defendants urge that title to the Hogback Lease is still less than clear, and so the B-C Case should remain pending

**Memorandum Opinion and Order** 7

until those title issues are determined and "the dust has settled." Second, the Kievit Defendants urge that B-C may have claims against the Trustee under 11 U.S.C. § 544, such that any purported release and/or the alleged effect of the Confirmation Order can be overcome. When the Court pointed out at the hearings that B-C could simply bring its claims in state court, the Kievit Defendants responded that they prefer this forum, because this Court presides over the Vallecito Case and has gained familiarity with all of the legal issues being raised.[6] Third, the Kievit Defendants argue that B-C is, by virtue of its bankruptcy filing, under this Court's supervision, and since service upon B-C and Briggs has been difficult during the Vallecito Case, it ought to stay that way. Counsel for the Kievit Defendants argued that "I have been in this system long enough to worry about letting someone go when we've got them under a tent. If you let them outside the tent, I think things can drag out farther. I think it'd be more expensive. If Briggs-Cockerham cannot reorganize, it would seem to me a Chapter 7 conversion, you would have a third party put in position who is independent, and a lot of these issues may move forward a lot quicker and a lot less expensively than otherwise." Transcript of hearing held 8/24/10 at 34:25-35:7.

After carefully considering the parties' competing arguments, the Court concludes, for the reasons set forth below, that "cause" exists and thus dismissal is required, absent unusual circumstances that establish that the requested dismissal is not in the best interests of creditors and the estate. The Court will examine each of the Trustee's alleged bases for dismissal.

Turning first to the Trustee's argument that there has been gross mismanagement *of the estate*, the Court concludes that the Trustee failed to establish this ground within the meaning of 11

---

[6] The Kievit Defendants were not listed as creditors in the B-C Case. However, the Kievit Defendants have filed proofs of claim in the B-C Case, asserting that to the extent the Trustee is able to invalidate or avoid the ORRI Interests transferred to them by B-C, they would have a claim against B-C.

U.S.C. § 1112(b)(4)(B). As stated by a leading bankruptcy treatise, § 1112(b)(4)(B) focuses "on the management of the estate and not on the debtor. The inquiry cannot include mismanagement of the debtor prior to the bankruptcy filing."[7] 7 Collier on Bankruptcy ¶ 1112.04[6][b] (16th ed. Rev.); *In re First Assured Warranty Corp.*, 383 B.R. 502, 544, n. 40 (Bankr. D. Colo. 2008) ("The term 'gross mismanagement of the estate' arguably renders any prepetition mismanagement irrelevant"). The Trustee has pointed to *nothing* that has occurred during the B-C Case that allegedly constitutes gross mismanagement of the estate. Rather, the Trustee relies exclusively on evidence of pre-petition actions taken by Briggs, sometimes acting on behalf of Vallecito and sometimes acting on behalf of B-C, as evidence of gross mismanagement and, he alleges, fraud.[8] Because the Trustee failed to prove any mismanagement of the B-C bankruptcy estate, this argument fails.

However, the Court does conclude that the Trustee has established both that (i) there is substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, and (ii) the bankruptcy filing by B-C lacks good faith. Because in the circumstances of the B-C Case these two grounds are interrelated, the Court will discuss them together.

The language used in the "new" § 1112(b)(4)(A), "substantial or continuing loss to or diminution of the estate" is nearly identical to the pre-BAPCPA language of § 1112(b)(1): "continuing loss to or diminution of the estate." Therefore, the case law interpreting the former §

---

[7] The Debtor's Pre-petition conduct can be considered, however, in the context of whether there is "cause" to dismiss the case on the uncodified ground of bad faith. *In re Melendez Concrete, Inc.*, No. 11-09-12334 JA, 2009 WL 2997920 (Bankr. D.N.M. 2009).

[8] The Trustee submitted evidence that (i) Briggs and Vallecito engaged in "repeated and flagrant discovery violations" in a state court lawsuit in 2007, which resulted in the issuance of a "death penalty sanctions" order, (ii) Briggs and B-C "routinely and flagrantly violated" a temporary injunction issued by the state court judge presiding over the same lawsuit, (iii) Briggs was the subject of a contempt motion brought by the Trustee in the Vallecito Case in 2008, and (iv) Briggs, using B-C, purported to sell the ORRI Interests to third parties in violation of the same temporary injunction. All of this conduct occurred prior to the filing of the B-C Case and has nothing to do with the bankruptcy estate's administration.

1112(b)(1) is relevant to the interpretation of § 1112(b)(4)(A). *In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. Pa. 2007). In determining whether there is a continuing loss to or diminution of the estate, courts look beyond a debtor's financial statements and "make a full evaluation of the present condition of the estate." *In re Moore Const. Inc.*, 206 B.R. 436, 437-8 (Bankr. N.D. Tex. 1997).

With respect to "bad faith" as "cause" to dismiss a chapter 11 case, courts typically consider several factors: (1) whether the debtor has only a single asset, such as a tract of land; (2) whether its assets are fully encumbered; (3) whether the debtor has any employees, cash flow and source of income to fund a plan; (4) whether the debtor has any unsecured creditors and the relative size of their claims, (5) whether there has been a foreclosure action on the debtor's assets. *In re New Towne Dev. LLC*, 404 B.R. 140 (Bankr. M.D. La. 2009). However, the oft-cited laundry list of factors is not always relevant or dispositive on the facts of a given case, and the Fifth Circuit has noted that "determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986). *See also In re Mirant Corp.*, No. 03-46590-DML-11, 2005 WL 2148362 at *3 (Bankr. N.D. Tex. Jan. 26, 2005) ("more useful to the court are cases that have adopted a 'valid bankruptcy purpose' test to determine good faith").

Here, it is undisputed that B-C has no "hard" assets, no operations, no employees, and no ongoing business to rehabilitate. The central purpose of chapter 11 is to facilitate reorganizations. *Florida Dept. Of Revenue v. Picadilly Cafeterias, Inc.*, 554 U.S. 33 (2008). There is no business here to reorganize. It is true that chapter 11 also expressly contemplates liquidations, *id.*, but a

liquidation in the B-C Case is equally difficult. The *only* potential assets here are litigation claims. While it is theoretically possible that should the litigation claims be successful, the Hogback Lease may ultimately be determined to be an asset of the B-C estate, substantial funds will be required in order to realize the value of that potential asset. It is undisputed that the B-C estate has no cash to fund that litigation, and no assets to liquidate to generate the needed cash. The Hogback Lease has, by definition, a fixed value. Thus, it is clear that its value to the B-C estate, if any, is being lost by the accrual of ongoing administrative expenses. It is also clear that there is no business to rehabilitate. *In re Antelope Technologies, Inc.*, No. 07-31159-H3-11, 2010 WL 2901017 at *4 (Bankr. S.D. Tex. July 21, 2010) ("the purpose of chapter 11 . . . is to assist financially distressed businesses by providing breathing space to reorganize"). B-C's counsel admitted at the hearings that B-C filed the B-C Case, in part, in the hopes of conducting a sale of the Hogback Lease free and clear of competing interests, but "the title issues proved to be insurmountable." Tr. of hearing held 8/24/10, p. 41:18. Thus, there is a continuing diminution to the estate and the absence of a reasonable likelihood of rehabilitation.

Moreover, any litigation claims that B-C holds will now be litigated in the Morton Adversary and need not also be litigated in the context of the B-C Case.[9] There is a forum in which B-C may pursue its claims if a third party chooses to fund that litigation.[10] It is in part for this reason that B-C

---

[9] The Trustee has filed an amended complaint in the Morton Adversary, which adds a cause of action against B-C and seeks a declatory judgment that B-C has no right, title or interest in the Hogback Lease on a variety of legal theories. *See* Doc. No. 98 in Adv. Pro. No. 10-3039-BJH. B-C answered the complaint and has asserted numerous counterclaims.

[10] As just noted, B-C has filed counterclaims against the Trustee in the Morton Adversary. *See* Def. Briggs-Cockerham, LLC's Resp. To Pltf's Compl., Counterclaim, Crossclaim Against John Joel Pugh and Request for Jury Trial (Docket No. 106 in 10-3039-BJH). In its first claim, B-C seeks a declaration that it is the owner of the Hogback Lease by virtue of an assignment from Vallecito to B-C that pre-dated Vallecito's bankruptcy filing. B-C also seeks a declaration that its "disclaimer" of any interest in the Hogback Lease is not binding or is

has consented to dismissal - it does not have the resources to litigate in two fora, and it has concluded that the litigation will go forward in the context of the Morton Adversary.

In short, there is nothing left to do in the B-C Case. B-C has no business to rehabilitate, liquidation of its *potential* assets cannot be accomplished within a reasonable period of time, and, assuming it can find the funds necessary to continue to litigate with the Trustee, that litigation will take place in the context of the Morton Adversary pending in the Vallecito Case.[11] Moreover, it appears that the B-C bankruptcy filing was a litigation tactic, designed to forestall the Trustee's efforts to bind B-C to an agreement between them in the Vallecito Case and to litigate the effect of the Confirmation Order in the Vallecito Case, which B-C failed to appeal. In these circumstances, the Court believes that the Trustee has established "cause" for dismissal, and thus dismissal is required absent unusual circumstances that establish that the requested dismissal is not in the best interests of creditors and the estate.

The Kievit Defendants have not articulated, no less established, any unusual circumstances that show that the requested dismissal is not in the best interest of creditors and the estate. Rather, they simply assert that they would like B-C "under the tent." This argument is not persuasive for at least two reasons. First, their desire to keep B-C "under the tent" is, standing alone, an insufficient basis upon which to conclude that a bankruptcy case should remain pending. Second, B-C is now

---

avoidable on several theories.

[11] A review of the schedules and amended schedules in the B-C Case shows that B-C has no secured or priority creditors; B-C scheduled twelve unsecured creditors holding in the aggregate $132,998 in claims. Seven of the creditors are law firms or litigation support firms. The largest unsecured creditor is Edwards Energy Corporation, which is listed as being owed approximately $91,000 for the "balance of purchase price allegedly owing pursuant to Purchase of Convertible Net Profits Agreement dated 10/17/02." None of the scheduled creditors have filed proofs of claim. Instead, the vast majority of proofs of claim have been filed by the persons who assert overriding royalty interests in the Hogback Lease, including the Kievit Defendants. In addition, Vision filed a proof of claim which it identifies as arising from a transaction involving the Hogback Lease, and Arcturus Corporation filed a proof of claim for claims arising out of the Vallecito Case.

"under the tent" as a newly-added defendant in the Morton Adversary. So, any benefit that might have been realized by the continued pendency of the B-C Case can now be realized through the Trustee's decision to add B-C as a party in the Morton Adversary.

### III. CONCLUSION

Because the Court has concluded that the Trustee established "cause" for the dismissal of the B-C Case and the Kievit Defendants have not established unusual circumstances showing that dismissal is not in the best interests of creditors and the estate, dismissal is required. Accordingly, the B-C Case is hereby dismissed.

**SO ORDERED**.

# # # END OF MEMORANDUM OPINION AND ORDER # # #